S. G. Stricker, for L. J. Goldman.

---

(Franklin County Common Pleas.)

WOODS v. THE EQUITABLE DEBENTURE CO.

---

(1). The rights of a certificate holder of a bond investment or debenture company, whatever they are, are referable to the contract, and are to be determined by it in accordance with the principles governing and controlling the administration of justice by courts of equity.

(2). A certificate holder of a bond investment or debenture company, in the absence of statutory authority, has no right to have the affairs of the company would up on the ground that it is insolvent.

(3). A court of equity, in the absence of statutory authority, has no jurisdiction to wind up the affairs of a bond investment or debenture company at the suit of a certificate holder. The proper action is one in quo warranto.

(4). A court of equity in the exercise of its general equity jurisdiction has no power to wind up the affairs of a bond investment or debenture company, and can not indirectly through the appointment of a receiver accomplish what can not be done directly.

(5). Where the company agrees to make payment upon maturity upon condition that all the dues or premiums shall be paid when due by the certificate holder, until that time he has no claim under the contract so long as the coupons are redeemed in the manner provided by the contract. He is not a general creditor under the terms of the contract.

(6). Where the certificate holder of a bond investment or debenture company was not induced to enter into his contract with the company by any false or fraudulent representations of any officer or agent of the company; where the company has not committed any breach of the contract; and where the money collected from certificate holders is applied in accordance with the terms of the contract, he has no legal claim against the company for any amount.

(7). A certificate holder of a bond investment or debenture company is not entitled to any portion of its reserve fund unless he continues his payments in accordance with the terms of the contract until the maturity of his certificate or debenture, unless the business of the company be wound up by a proceeding for that purpose.

(Decided January 14th, 1900.)

---

BIGGER, J.

The defendant demurs to the petition upon the ground that it appears from the face of the petition—first, that the court has no jurisdiction of the subject matter of the action, and second, that the petition does not state facts sufficient to constitute a cause of action against the defendant.

Unless a cause of action of which the court has jurisdiction is stated in the petition the relief asked of injunction and receivership can not of course be granted. The first question for determination is, therefore, does the petition state a cause of action. It is to be observed that the plaintiff stands upon his contract, and under the state of facts disclosed by the averments of the petition asks the court to determine what his rights and those whom he represents are in equity. The rights of the plaintiff and those whom he represents whatever they are, are referable to the contract and are to be determined by it in accordance with the principles governing and controlling the administration of justice by courts of equity.

The plaintiff in this case does not allege that he was induced to enter into this agreement by any false or fraudulent representations of any officer or

[COPYRIGHT, 1901, BY CARL G. JAHN.]

agent of the defendant company. He does not allege that the defendant company has committed any breach of the contract. The gravamen of the plaintiff's complaint is the ruling of the post-office department of the United States government which it is alleged prevents the company from using the United States mails for the promotion of its business and that this has rendered it impossible to carry out the terms of the contract. It is not alleged that the defendant company was in any way responsible for obtaining this adverse decision of the post-office department. The decision, if it applies to this company, and the petition avers that it does, will undoubtedly be disastrous to both the company and the certificate holders. But is the company any more in fault than the certificate holders? The terms of the contract are clearly set out in the certificate or debenture. The method by which the coupons attached to these debentures are to be redeemed is fully set out in the certificate or debenture. It is not alleged, as I have said, that any representations were made that the method would be different from that set out in the contract, or in fact that it has been different from that set out in the contract. The plaintiff knew, therefore, when he entered into this contract the method by which the company was to determine what coupons should be redeemed. It is averred by the plaintiff that said contract which the defendant company made and entered into with the plaintiff and other debenture holders, is unlawful and void because it is dependent upon mere chance, but which was not clearly apparent to this plaintiff and other certificate holders at the time they purchased their said certificates. But does this amount to anything more than an allegation that the plaintiff and those whom he represents were mistaken as to the legal effect of the contract into which they entered? It is a general rule of law that a simple mistake of law as to the legal effect of a contract into which a person enters, or as to the legal result of it, affords no ground for relief either affirmative or defensive.

This plaintiff and those whom he represents are not general creditors of the defendant company under the terms of the contract. The company agrees to make payment upon maturity upon condition that all the dues or premiums shall be paid when due by the certificate holder, but until that time he has no claim under the contract so long as the coupons are redeemed in the manner provided by the contract. So that under the allegations of the petition the plaintiff has no present legal claim against the defendant company for any amount.

The defendant corporation has, however, under the terms of this contract money of the certificate holders in its possession, and which it agrees to repay upon certain conditions, and in that respect occupies the position towards this plaintiff and the other debenture holders of a trustee. Illegal trusts are also generally unenforcible in equity. Pomeroy on Equity Jurisprudence at section 987 says: "Equity will enforce all lawful trusts. If a trust should be created for an illegal or fraudulent purpose, equity will not enforce it, nor, it seems, relieve the person creating it by setting aside the conveyance."

These are the general rules upon the subject of relief under illegal contracts where the parties are in pari delicto. But even where the parties are in pari delicto there are some exceptions to the general rule. Upon this subject Pomeroy says at section 940: "The proposition is universal that no action arises in equity or at law from an illegal contract. No suit can be maintained for its specific performance or to recover the property agreed to be sold or delivered, or the money agreed to be paid, or damages for its violation. The rule has sometimes been laid down as though it were equally universal, that where the parties are in pari delicto, no affirmative relief of any kind will be given to one against the other. This doctrine, though true in the main, is subject to limitations and exceptions which it is the special object of the present inquiry to determine. As application of this principle, the following rules may be regarded as settled where the parties are in pari delicto. If the contract has been voluntarily executed and performed, courts of equity will not, in the absence of controlling motives of public policy to the contrary, grant its aid by decreeing a recovery back of the money paid or property delivered or a cancellation of the conveyance or transfer." Section 941: "To the foregoing rules there is an important limitation. Even where the contracting parties are in pari delicto, the courts may interfere from motives of public policy. Whenever public policy is considered as advanced by allowing either party to sue for relief against the transaction, then relief is given to him. In pursuance of this principle and in compliance with the demands of high public policy, equity may aid a party equally guilty with his opponent, not only cancelling and ordering the surrender of an executory agreement, but even by setting aside an executed contract, conveyance or transfer and decreeing the recovery back of money paid, or property delivered, in performance of the agreement. The cases in which the limitation may apply and the

affirmative relief may thus be granted, include the class of contracts which are intrinsically contrary to public policy—contracts in which the illegality itself consists in their opposition to public policy and other species of illegal contracts in which, from their particular circumstances, incidental and collateral motives of public policy require relief."

In the following section the author states the rule upon the subject where both parties are not in pari delicto although both are to some extent affected by the illegal taint, that is, says the author, "where both have not with the same knowledge or willingness and wrongful intent engaged in the transaction, or the undertakings of each are not equally blame worthy", in which case a court may grant relief by decreeing the recovery of money paid or property delivered. From the allegations of the petition it appears that the objections of the post-office department and the ground upon which the use of the mails was forbidden was not alone that it was a scheme of chance but that it was not based upon a sound financial scheme and was in fact a fraud upon the public. As to that it might well be held that the defendant corporation with its superior knowledge of the subject would occupy a different position from the public at large. In view of the consideration which I am about to state I have found it unnecessary to decide this question as to whether or not the parties are in pari delicto, if it be found that the contract set out here is illegal and contrary to law and public policy, but merely express the opinion in passing that if the business of this company should be declared illegal and against public policy that the plaintiff and other certificate holders should be decreed the right to recover upon equitable principles the fund found to be in the hands of the defendant corporation payable to the certificate holders under the terms of their contract.

But what are the rights of the plaintiff and others similarly situated against the defendant corporation? This is not an action for damages against the defendant for fraud and deceit. It is an action to recover what the plaintiff and those whom he represents are entitled to recover by virtue of this contract and their payments thereunder. There are no averments that the money collected from the certificate holders has not been applied in accordance with the terms of the contract. This money is divided into three funds: the expense fund; the reserve fund; and the redemption fund. What right has the plaintiff and other certificate holders to any portion of the expense fund? It seems entirely clear to me that neither in law nor in equity are they entitled

to any part of the expense fund. They agreed that fourteen per cent of the money collected should be retained by the company as expenses for transacting the business; sixty-six per cent. of the money collected was to be paid out each month in redemption of coupons, and there is no averment that this has not been done by the company. So that no part of the redemption fund remains in the hands of the company. This leaves only the reserve fund which was to be used for the payment of certificates or debentures at maturity whenever the redemption fund then available was insufficient to do so.

Now the plaintiff alleges in the petition that he brings this action for the benefit of himself and others similarly situated. It is not clear from the allegations of the petition just who the plaintiff does represent. But he does not allege, and I understand the fact to be that he does not represent all the certificate holders of the defendant company. Now this reserve fund under the terms of this agreement belongs to all the certificate holders to be applied in the manner provided in the contract. Under the terms of the contract the plaintiff would not be entitled to any portion of it unless he continued his payments until the maturity of his debentures. Upon what principle of equity, therefore, can the court now lay its hands upon this fund, the only fund to which the certificate holders have any claim in equity, so long as the certificate holders do not come into court? The equities of these certificate holders to this fund are undoubtedly equal. If this contract is an unlawful one and contrary to public policy, upon which I do not find it necessary to express an opinion, then of course neither party could by suit enforce it, but there is nothing to prevent their carrying it out if they see fit to do so. When this plaintiff entered into this contract he knew that this reserve fund was only available to himself in common with all the other certificate holders upon maturity of their certificates. Upon what principle of equity, therefore, can he now ask the court to lay its hands upon this fund and decree a portion of it to belong to him and certain others of the certificate holders without complying with the contract which was common to all of them, or what order could the court make as to this fund which belongs to all of them without all the certificate holders being in court? It seems to me clear that the court under such circumstances could render no decree which would do equity in the premises. I have no doubt that if the business of this corporation were wound up by a proceeding for that purpose, the court would decree that this fund should be returned to these certifi-

cate holders upon some equitable principle and, upon the well known equitable principle that equality is equity, probably in proportion to the amounts they have respectively paid in.

But the court can not wind up the affairs of this corporation upon this petition, and indeed the court, in the exercise of its general equity jurisdiction, has no power to do so. Upon this point are numerous authorities and some decisions in this state. It would seem from the petition that this is the object sought by the plaintiff. He alleges that it has ceased to do business; that it is paying large salaries to its officers, and seeks to have it enjoined from paying out any of its funds for this purpose. He alleges that it is insolvent, and asks that all its assets be taken charge of by a receiver, and, upon a determination of the rights of the plaintiff and those whom he represents, that its assets be applied to the payment of their claims as well as upon all the other debts and obligations of the defendant company. He alleges that its officers have been attempting to induce the certificate holders to surrender their certificates and receive in lieu thereof stock in another corporation to be organized. These and other averments in the petition seem to clearly indicate that the relief which the plaintiff seeks is to have the affairs of the corporation wound up, and its assets disbursed by a receiver under the orders of the court. But a court of equity in the exercise of its general equity jurisdiction has no power to wind up the affairs of the corporation. Upon this point I cite the following: Morawetz on Private Corporations, secs. 282, 283; High on Receivers, secs. 288 and 289; 17 New York, 221; 143 Illinois, 197; Cook on Corporations, 629.

Smith on Receivers at section 220 says: "Such courts, not having inherent power to wind up a corporation, can not indirectly through the appointment of a receiver accomplish what can not be done directly."

Many other authorities might be cited to the same effect. In the case of North Fairmount Building & Savings Company v. Rehn, 6 N. P., 185, the superior court of Cincinnati at general term held: "A share holder has no right in the absence of statutory authority to have the affairs of a corporation wound up on the ground that it is insolvent."

In that case, as in this, the plaintiff did not ask to have the affairs of the corporation wound up. It was alleged that the corporation was insolvent and that the directors had been guilty of mismanagement and of fraudulent acts in the performance of their duties. The petition prayed for an accounting and for an injunction against the corpora-

tion and its directors, and for a receiver to take charge of the corporate assets and for further orders, as the court said, practically winding up the corporation and distributing its assets among those entitled to them. The case was on error to the special term. In the opinion delivered by Judge Smith, he say, on page 186: "I have quoted at some length from the final decree in the case * * * because the parts of the decree quoted make clear that the order of the court was intended to take the property of the association and the management of the same entirely out of the hands not only of the directors of the association but also of the stockholders and to wind up the affairs of the corporation through the officers of the court." He then quotes from Thompson on Corporations, High on Receiver, and Beach on Receiver, etc., that the court has no such jurisdiction in the absence of an express statute. To the same effect is the decision of the circuit court of Hamilton county in the case of C. H. & D. Railroad v. Duckworth, 2 C. C., 518. Also the case of Cronin v. Potter Co-Operative Company decided by the common pleas court of Columbiana county and reported in the 29th Bulletin at page 52; and also the case of Robinson v. The Cleveland Railway, 5th N. P., 293.

It is true, that if the petition in this case stated facts which would entitle plaintiff to any relief at the hands of the court, although not all that prayed for, the demurrer should be overruled. The statute regulating this defendant corporation and others of like kind, passed April 14, 1900, provides for an inspection of these companies, and provides that it shall be the duty of the supervisor of bond investment companies to institute proceedings in quo warranto against the company in the manner provided by law. I understood counsel for plaintiff in argument upon the demurrer to claim that quo warranto would not lie against this corporation because it was a foreign corporation. But the supreme court of this state has held that quo warranto will lie as well against a foreign as against a domestic corporation. 47 Ohio St., 167; 49 Ohio St., 440.

While of course a court can not deprive it of its franchise to be a corporation granted by another state, it will oust it from doing business in this state if it is found to be conducting its business unlawfully. I am therefore clearly of the opinion that this court in the exercise of its equity powers can not upon the facts stated grant the plaintiff any relief. That the only fund to which the plaintiff and those whom he represents have any right is the reserve fund, and that for the reasons I have stated this plaintiff can not upon

the facts stated have decreed to him any specific portion of this fund but that he can only obtain his share of this fund by compliance with his contract or upon the winding up of the business of his corporation his equitable proportion of the.fund along with all of the certificate holders of the corporation.

The demurrer is therefore sustained.

Kinkead, Merwine & Schumacher, for Plaintiff.

Dwight Harrison and John J. Stoddart, for Defendant Company.

———　—　—————

NOTE—The defendant company is a corporation organized under the laws of the state of West Virginia and has its principal office and place of business in the city of Columbus, Ohio.

It is doing business in Ohio under an act of the legislature of Ohio, passed April 25, 1898 (93 O. L., 401), as amended April 14, 1900 (94 O. L., 147), and is complying absolutely with each and every provision enjoined upon it in said act.

It has complied with all the laws of Ohio relating to foreign corporations doing business in Ohio, and has all the certificates required to be issued by the secretary of state of Ohio and the supervisor of bond investment companies of Ohio.

The plaintiff is the owner and holder of one hundred (100) certificates or debentures of the defendant company. He brings this action on his own behalf as well as on behalf of all the owners and holders of certificates or debentures of the defendant company similarly situated, and for his and their benefit prays "that his rights under the certificates or debentures held by him, and issued by the defendant, as well as all of the rights of all other certificate or debenture holders on whose behalf this suit is brought, may be ascertained, adjusted and determined and that an accounting may be had of the amount due plaintiff and other certificate holders; and that the defendant may be enjoined from paying out any of the funds now in its treasury or from interfering with the amount deposited with the state treasurer; and that a receiver be appointed by the court to take charge of all of the property and assets of the defendant company, including the cash hereinbefore alleged to be in the hands of the defendant, as well as the entire sum of $25,000 which sum is deposited with the treasurer of state as herein alleged; and that when the rights of this plaintiff and all those whom he represents are accounted and determined and the amount due each certificate or debenture holder are ascertained, that the proceeds in the hands of the receiver may be applied in payment and liquidation thereof, as well as all the debts and other obligations of the defendant company, and for such other and further relief to which the plaintiff and those whom he represents may be entitled."

The grounds upon which this prayer is predicated are, as stated in the petition, substantially as follows: That a ruling of the post office department made December 5th, 1900. makes it unlawful for the defendant company to carry on its business through the mails, and that by reason of said ruling the defendant company has ever since said date been unable to carry on its business in the way of soliciting and procuring new business; that the defendant company has ceased doing business and is doing no business except collecting from the owners and holders of its outstanding certificates or debentures the monthly payments or dues accruing thereon; that the contract which the defendant company made and entered into with the plaintiff and others similarly situated is unlawful and void because it is. dependent upon mere chance; that it will be impossible for the defendant company to continue the redemption of coupons for any considerable period of time unless new members or certficate holders are acquired; that it will be impossible for the defendant company to carry out and perform its contracts with the plaintiff and other certificate holders; that the defendant company is wholly insolvent; that the business of the defendant company can not be continued without loss and a wasting of its assets; that the defendant company sought to have its certificate holders surrender their certificates and accept therefor full pay and non-assessable stock in another corporation to be organized and to be designated as "the Buckeye Shoe Manufacturing Company" for the purpose of engaging in the manufacture of shoes, and that said plan was conceived for the purpose of diverting the assets of the defendant company from their proper purpose to another and different purpose, and for the purpose of securing to the defendant company and its stockholders the amount of money which the defendant company now has on deposit with the treasurer of state of Ohio; that "it is difficult to ascertain and to determine from a mere reading of the contract made and entered into by the defendant and its certificate holders, precisely what the rights of plaintiff and other certificate holders are with respect to the money now in the hands of the defendant company"; and that "unless the relief asked herein is granted and the rights of this plaintiff and all the certificate and debenture holders are determined and adjusted,

and the funds now in the hands of the defendant are taken charge of by this court, as well as all of its property and preserved and applied to the liquidation, together with the sums so as aforesaid deposited with the treasurer of the state of Ohio, the claim of this plaintiff and all others similarly situated, as well as to the outstanding debts and obligations, the right of this plaintiff and other certificate holders on whose behalf this suit is brought will be materially injured, jeopardized and lost.''

The plaintiff also sets out his contract with the defendant company which said contract is as follows, to-wit:

"The Equitable Debenture Company does hereby agree to pay to ――――――― or order upon maturity or redemption of any of the hereto attached five coupons, a sum equal to all the payments made thereon together with the respective share of the net surplus earnings as shown by schedule of redemption values.

''The terms and conditions printed on the back hereof and in application therefor are a part of this contract as fully as if recited herein.''

### Terms and Conditions.

Payments on this debenture shall be five (5) dollars membership fee for the first month, and thereafter an installment of fifty cents per month on each unredeemed coupon until redemption or maturity. The membership fee must accompany the application and the monthly installments are due without notice at the main office or some duly authorized depository, on the first day of each month, beginning with the first month after date of this certificate. Failure to pay on or before the fifteenth day of the month any installment due hereon shall render this contract null and void and forfeit all payments made on same, but the same may be reinstated any time within thirty days from lapse, by payment of overdue installment and a fine of ten cents on each unredeemed coupon, but in no case shall the fine be less than twenty-five cents.

No receipt for payment is valid unless it bears the signature of the secretary or some person acting upon his written authority, and all remittances are made at the sender's risk.

Apportionment of receipts—All money paid to the company on account of debentures (or coupons) shall be divided into three separate funds, which shall be designated and used as follows: Reserve fund—This fund shall consist of twenty per cent. of all the monthly installments paid to the company by holders of its debentures, which, together with its interest incre-

ment, shall be invested in such securities as the board of directors may deem advisable.

Expense fund—This fund shall consist of the purchase price of all debentures (viz., five dollars on each debenture issued) together with fourteen per cent. of all subsequent installments received by the company on account of same; also of all fines transfer fees, and other extraneous receipts.

Redemption fund—This fund shall consist of sixty-six per cent. of all the money collected by the company on account of the monthly installments on outstanding debentures. It shall be subdivided into two separate funds, designated respectivey as a "special redemption fund," and the "general redemption fund," each of which shall be applied monthly as collected to the redemption of coupons as hereinafter specified.

Special redemption—Each month twenty per cent. of the total redemption fund for that month shall be used as a special redemption fund for that month, to be applied as follows: The lowest numbered coupon of the lowest numbered debenture shall be redeemed; then the lowest numbered coupon of the next debenture in order, and so on through the list until said fund is disbursed.

General redemption—Each month eighty per cent. of the total redemption fund for that month (provided no applications for withdrawal have been filed) shall be used as a general redemption fund, to be applied as follows: The coupons to be redeemed each month with this fund are scattered throughout the entire list of coupons eligible for redemption, and cannot be designated in advance of the disbursement of the special redemption fund, nor until the calculation (hereinafter described) has been made for the purpose of determining the number of coupons that must be alternately passed over in the course of redemption. After the number which must intervene between the coupons to be redeemed has been determined as aforesaid, and the special redemption for the month has been concluded, a starting point for the general redemption is given by redeeming the lowest numbered coupon attached to the debenture next following the last one from which a coupon was redeemed by the special redemption. And then passing over as many consecutive coupons (of those eligible for redemption) as are equal to the "redemption numeral," redeem another, and so on in like order until the fund is disbursed.

In the event that any applications for withdrawals shall have been filed, and amount not exceeding fifty per cent. of

said general redemption fund shall each month be used for the purpose of paying off said withdrawals.

Redemption shall occur regularly on the 25th day of each month but whenever the 25th shall fall on Sunday or other legal holiday, the redemption shall occur on the next legal day following.

The numeral apart which shall elect the coupons to be redeemed, must be determined by dividing the total number of eligible coupons by the number the amount will pay on basis of the average value of such coupons.

Surrender value—At any time after twelve months from the date hereof, provided all payments of installments have been made as the same become due and payable, the holder of this debenture may, if he so desires, surrender same to the company and receive therefor a paid-up certificate for the total sum paid on account of this debenture to that date (less the amount received from the company on account of coupons previously redeemed), together with eight per cent. per annum for the average time. This accrued interest to be added to the principal of the paid-up certificate. All such paid-up certificates will be paid by the company in the order in which the applications for same are filed, and shall bear interest at the rate of eight per cent. per annum until paid. For this purpose an amount not exceediing fifty per cent. of the general redemption fund for any one month may be used.

Death clause—In the event of the death of the holder hereof, his heirs or legal representatives may at their option continue the payments on same, or file an application for withdrawal, said application to be subject to the same terms and conditions governing the applicants for surrender values, except that the debenture need not have been in force twelve months.

Agent's authority—No person has power to alter, waive or modify in any way, the terms and conditions of this contract, and no promises and conditions other than those contained herein shall be binding upon the company.

Transfer—This debenture is transferable only on the books of the company, for which a fee of twenty cents for each unredeemed coupon is charged, but in no case will the fees be less than fifty cents.

Eligibility and maturity—This debenture shall not be eligible for redemption until one monthly payment shall have been made hereon, and will be deemed fully matured at expiration of one hundred and twenty months from date hereof. The money necessary to pay off said mature debentures shall be drawn from the redemption fund most immediately available, and should that amount be insufficient for the purpose, then the balance shall be drawn from the reserve fund.

The defendant company demurred to the petition of the plaintiff for the reasons (1) that the court has no jurisdiction of the subject matter of the action; and (2) that the petition does not state facts sufficient to constitute a cause of action.

Counsel for the defendant company, Mr. Dwight Harrison and Mr. John J. Stoddart, contend, among other things:

First: That the relief sought by the petition is provided for by the statute relating to and governing corporations like the defendant company (94 O. L., 147), and can only be obtained in the manner therein (section 6) described, to-wit, by proceedings in quo warranto instituted by the supervisor of bond investment companies;

Second: That the ultimate relief sought is the dissolution of the defendant company; that the appointment of a receiver for the defendant company, or the granting of the other relief prayed for, would necessarily result in the dissolution of the company, and the court would thus accomplish indirectly what it has no power to do directly;

Third: That a mere creditor or claimant whose claim is not in judgment is not entitled to an injunction or receiver, and that the plaintiff is a simple contract creditor of the defendant company;

Fourth: That a creditor must be a judgment creditor, or must have taken steps to reduce his claim to a judgment before he is entitled to an injunction or a receiver, and that the plaintiff had no brought himself within the rule;

Fifth: That the plaintiff is a simple contract creditor of the defendant company, and that his rights, whatever they are, are referable to the contract and are to be determined by it in accordance with its terms and conditions; that in the absence of any allegation that the plaintiff was induced to enter into the contract by any false or fraudulent representations of any officer or agent of the defendant company, so long as the defendant company at all times fully carries out and performs on its part its contract with the plaintiff and other certificate holders and does not commit any breach of the contract, and applies the money collected from its certificate holders in accordance with the terms of the contract, the plaintiff has no legal claim against the defendant company for any amount whatever;

Sixth: That the petition does not state

facts which authorize the court to grant an injunction, either under the statute or in the exercise of its general equity jurisdiction and remedial functions;

Seventh: That the petition does not state facts which warrant the interposition of a court of equity by the aid of a receiver, nor does it bring the case within the statutory rule authorizing such appointment;

Eighth: That if there is anything in the plaintiff's claim that the defendant is engaged in a fraudulent and lottery scheme, he is clearly not entitled to the relief asked for by the maxim in pari delicto, melior est conditio defendentis; and if, as alleged, the defendant company is engaged in a fraudulent and lottery scheme, which would come within the prohibition of the constitution and statutes of the state of Ohio, then the plaintiff who engaged in business with the defendant company and purchased its certificates is particeps criminis and in pari delicto.